UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MINNESOTA CHAPTER OF ASSOCIATED BUILDERS AND CONTRACTORS, INC.; BUILDERS ASSOCIATION OF MINNESOTA; and J & M CONSLUTING, LLC, | Civil No. 25-550 (JRT/JFD) |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| v. | |
| NICOLE BLISSENBACH, *in her official capacity as the Commissioner of the Minnesota Department of Labor*, and KEITH ELLISON, *in his official capacity as the Attorney General of Minnesota*, | |
| Defendants. | |

Kurt J. Erickson, Lehoan T. Pham, and Thomas R. Revnew, **LITTLER MENDELSON, P.C.**, 80 South Eighth Street, Suite 1300, Minneapolis, MN 55402, for Plaintiffs.

Janine Wetzel Kimble and Matthew Anthony McGuire, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 600, Saint Paul, MN 55101, for Defendants.

Plaintiffs Minnesota Chapter of Associated Builders ("MNABC"), Builders Association of Minnesota ("BAM") and J & M Consulting, LLC ("JMC") (collectively, "Plaintiffs") filed this action to enjoin enforcement of Minnesota Statutes § 181.723 (the "Statute"). The Statute was recently amended to replace the former nine-part test for classifying construction workers as independent contractors with a fourteen-part test.

Plaintiffs argue that the Statute is unconstitutional and that JMC and other members of MNABC and BAM (collectively, "Members")[1] will face irreparable harm while challenging the merits, so Plaintiffs seek a temporary restraining order ("TRO") or a preliminary injunction to enjoin enforcement of the Statute before it takes effect on March 1, 2025. Because the *Dataphase* factors favor the State, the Court will deny the Motion for a TRO and a Preliminary Injunction.

## BACKGROUND

### I. FACTS

MNABC is a statewide professional trade organization representing the interests of construction-related firms around Minnesota. (Compl. ¶ 21, Feb. 12, 2025, Docket No. 1.) BAM is a statewide trade association representing the interests of homebuilders across Minnesota. (*Id.* ¶ 23.) JMC provides commercial construction services across Minnesota and is a current member of MNABC and BAM. (*Id.* ¶ 25.)

Minnesota Statutes § 181.723, subd. 4 governs whether construction workers can be classified as independent contractors. In May 2024, the Minnesota Legislature amended § 181.723, subd. 4 to change the nine-part test for classifying independent contractors to a fourteen-part test. Minn. Stat. § 181.723, subd. 4(a). The new test for classifying independent contractors is scheduled to take effect on March 1, 2025. *Id.*

---

[1] MNABC and BAM do not allege that they are subject to the Statute or will themselves be harmed by it. Instead, they assert associational standing to bring this action because JMC has standing. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

In addition to the change in the classification test, civil penalties were added. *Id.* § 181.723, subd. 7(g)(2)–(4). These penalties are discretionary and may result in fines up to $10,000 for each violation as well as a $1,000 fine for each day of delay, obstruction, or failure to cooperate with the commissioner of labor and industry's investigation. *Id.*

Under the former and current version of the Statute, the Department of Labor and Industry ("DLI") and the Attorney General have enforcement authority. *See* §§ 177.27, subd. 4, 181.1721, 8.31. There also is a private right of action, through which a misclassified individual may seek compensatory damages. *Id.* §§ 181.171, subd. 1, 181.723, subd. 7(g)(1).

DLI may issue compliance, administrative, and licensing orders in response to violations of the Statute. *Id.* §§ 177.27, subd. 4, 326B.082, subd. 7(a), subd. 11(b)(1)–(2). An employer may contest any order issued by DLI through administrative proceedings. *Id.* §§ 177.27, subd. 4, 326B.082, subd. 8, subd. 12(c). Minnesota law further requires that agencies with discretion over a fine amount evaluate certain factors, such as willfulness and the number of violations, in determining the amount of the fine. *Id.* § 14.045, subd. 3.

## II.   PROCEDURAL HISTORY

Plaintiffs filed their Complaint on February 12, 2025, alleging that the Statute is unconstitutionally vague both facially and as applied, violates the Excessive Fines Clause of the U.S. Constitution, is preempted by the National Labor Relations Act, and violates procedural due process. (Compl. ¶¶ 71–101.)  Plaintiffs moved for a temporary

restraining order and a preliminary injunction. (Mot. TRO/Prelim. Inj., Feb. 13, 2025, Docket No. 8.) The State opposes the motion.

## DISCUSSION

### I. STANDARD OF REVIEW

Courts evaluating a motion for a temporary restraining order or a preliminary injunction weigh four factors, commonly referred to in the Eighth Circuit as the *Dataphase* factors: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm injunctive relief would cause to the other litigants; and (4) the public interest. *Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)); *S.B. McLaughlin & Co., Ltd. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989). The party seeking injunctive relief bears the burden of proving the *Dataphase* factors. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

When applying these factors, "a court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999) (quoting *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998)). That said, "injunctive relief is an extraordinary remedy and the movant has the burden of establishing the propriety of an injunction." *Watts v. Fed. Home Loan Mortg. Corp.*, No. 12-692, 2012 WL 1901304, at *3 (D. Minn. May 25, 2012).

## II. LIKELIHOOD OF SUCCESS ON THE MERITS

The Court's most important duty in a preliminary injunction analysis is to decide whether the plaintiff is likely to succeed on the merits. *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1342 (8th Cir. 2024). When a movant seeks to enjoin a duly enacted state statute, the court must "make a threshold finding that a party is likely to prevail on the merits." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732–33 (8th Cir. 2008) (en banc) (noting that requests for preliminary injunctions against state statutes are subject to a "more rigorous standard" than the familiar "fair chance of prevailing" standard in other cases).

Before evaluating the likelihood of success for each count, the Court must address a separate threshold issue: whether the Statute can be considered criminal in nature. Several of Plaintiffs' likelihood-of-success arguments are dependant on this question. The Statute itself only contemplates civil fines, but the parties acknowledge that there is some possibility of criminal prosecution from violations of the Statute.

The Court must start with statutory construction to evaluate whether the legislature expressly or impliedly considered the Statute's penalties to be civil or criminal. *Students for Sensible Drug Pol'y Found. v. Spellings*, 523 F.3d 896, 899–90 (8th Cir. 2008). A civil label may not be dispositive if the party challenging the statute presents "the clearest proof that the statutory scheme is so punitive either in purpose or effect as to negate the State's intention." *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997) (cleaned up).

Here, the legislature provided only for monetary civil penalties imposed by the DLI that are appealable through administrative proceedings. Nothing on the face of the Statute suggests that it was meant to impose anything besides civil penalties. Because the Statute clearly labels the penalties as civil, Plaintiffs need to present "the clearest proof" to the contrary. They have not done so. To arrive at possible criminal penalties, Plaintiffs must weave hypothetical violations through a maze of other statutory provisions. While creative, the Court finds application of these provision to be highly unlikely. The Court, therefore, will evaluate the Statute as only imposing civil penalties.

### A. Unconstitutionally Vague

Count I alleges that the Statute is unconstitutional facially and as applied because it is vague in that it fails to define material terms and allows for arbitrary and inconsistent enforcement. Because Plaintiffs have alleged no specific facts that would distinguish their vagueness challenge from a broad, facial challenge, the Court will construe their challenge as a facial challenge.

Due process protects against laws that are void for vagueness if the "prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). To determine if a statute is unconstitutionally vague, courts must consider whether the statute provides adequate notice of the prohibited conduct and whether it lends itself to arbitrary enforcement. *Metro. Omaha Prop. Owners Ass'n, Inc. v. City of Omaha*, 991 F.3d 880, 886 (8th Cir. 2021). As long as the statute provides sufficient information on what is prohibited, "meticulous specificity" is unnecessary. *Grayned*, 408 U.S. at 110. Courts

allow wider latitude of specificity to statutes that do not impose criminal penalties. *Rowles v. Curators of Univ. of Mo.*, 983 F.3d 345, 356 (8th Cir. 2020). Because this Statute does not impose criminal penalties, the Court will not impose a higher standard to its vagueness analysis.

Plaintiffs allege the Statute is unconstitutionally vague based on its failure to define material terms. Plaintiffs suggest that the lack of definitions indicates that an ordinary person would not be on notice of what conduct is prohibited, nor would the enforcers know what conduct is prohibited, which would inherently lead to arbitrary enforcement. In making their arguments, however, Plaintiffs just isolate certain terms and speculate about possible interpretations. But the Statute taken as a whole sufficiently specifies how to classify independent contractors under the amended fourteen-part test.

For example, Plaintiffs take issue with the lack of a definition for the term "invoice." First and foremost, invoices are common in a variety of different business contexts, so the Court finds it hard to believe that Plaintiffs would not understand its plain meaning. Further, DLI has answered this question in its frequently asked questions guide. Plaintiffs cannot claim a lack of understanding by choosing to ignore clarifying resources or the plain meaning of terms. *McGowan v. Maryland*, 366 U.S. 420, 428 (1961) (finding that if a reasonable investigation would remove any need to guess at the meaning of a statute, that statute is not unconstitutionally vague).

Plaintiffs also focus on the term "main expenses and costs." At issue is only the addition of "costs." "Main expenses" was in the prior nine-part classification test and Minnesota appellate courts determined that the scope of main expenses comes directly from the contract. *Nelson v. Levy*, 796 N.W.2d 336, 340–41 (Minn. Ct. App. 2011). Additionally, the *Nelson* court addressed the precise situation that Plaintiffs now claim is vague: whether raw materials count as main expenses and costs. The court concluded that requiring construction workers to "pay for and supply all of the material that he or she uses in order to be considered an independent contractor would lead to an absurd result." *Id.* at 341. With that backdrop, the Court finds it difficult to understand how Plaintiffs can argue that they have no understanding of what "main expenses and costs" are.

Ultimately, Plaintiffs have presented a number of outstanding questions about the application of the amended Statute. But outstanding questions do not necessarily render a statute unconstitutionally vague. *Thorburn v. Austin*, 231 F.3d 1114, 1121 (8th Cir. 2000) ("[T]he fact that questions may arise regarding [the ordinance's] applicability to certain conduct does not automatically lead to the conclusion that it is void for vagueness").

Plaintiffs rest on these perceived ambiguities to support their argument that the Statute will be arbitrarily enforced. But as described above, Plaintiffs' alleged vagueness is the "flexibility and reasonable breadth" that is constitutionally acceptable. *Grayned*, 408 U.S. at 110. Just because parties may disagree about the precise meaning of every

term does not render a statute's enforcement arbitrary. *Rowles*, 983 F.3d at 357 ("[T]he mere fact that enforcement requires the exercise of a reasonable degree of judgment does not make the policy impermissibly vague."). Furthermore, any penalties are subject to an extensive administrative appeals process that prevents arbitrary enforcement by curbing DLI's discretionary power. *See, e.g.*, Minn. Stat. § 177.27, subd. 4; *see also Vill. Of Hoffman Ests. V. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494 n.5, 504 (1982).

Because Plaintiffs have not established that the Statute fails to provide adequate notice or will be arbitrarily enforced, they have not shown a likelihood of success on Count I.

### B.   Excessive Fines

Count II alleges that the Statute imposes unconstitutionally excessive fines in violation of the Eighth Amendment.

Under the Excessive Fines Clause, the Eighth Amendment prohibits fines that are "grossly disproportional" to the gravity of the offense. U.S. Const. amend. VIII, cl. 2; *Qwest Corp. v. Minn. Pub. Utils. Comm'n*, 427 F.3d 1061, 1069 (8th Cir. 2005). The Eighth Amendment's prohibition on excessive fines applies to states through the Fourteenth Amendment. *Qwest Corp.*, 427 F.3d at 1069.

Plaintiffs' Excessive Fines claim is unlikely to be successful for several reasons. First, the Statute imposes only civil penalties, which raises the question of whether the Excessive Fines Clause even applies. Second, no fines have been imposed, so any Excessive Fines analysis may be premature. Third, the fact that the fines are discretionary

and specifically tailored to the violation render any general Excessive Fines challenges difficult to substantiate. The Court will evaluate each of these issues in turn.

Typically, the Excessive Fines Clause has been applied to fines imposed in conjunction with criminal penalties. *See, e.g.*, *United States v. Bajakajian*, 524 U.S. 321, 328–29 (1998) (finding that forfeiture after conviction of an underlying felony is a "fine"). The Eighth Circuit, however, has not foreclosed applying the Excessive Fines Clause to civil penalties. *See, e.g.*, *Hays v. Hoffman*, 325 F.3d 982, 992 (8th Cir. 2003) (applying the Excessive Fines Clause to False Claims Act penalties as they are punitive in nature). Violations of the Statute could result in civil penalties, but the Statute does not mandate such penalties. Minn. Stat. § 181.723, subd. 7(g). Plus, when penalties are imposed, they must be tailored to the specific conduct. *Id.* § 14.045, subd. 3. The potential fines under the Statute are thus not punitive in nature, and so the Excessive Fines Clause is unlikely to apply.

Because the Statute is not yet in effect, no fines have been imposed. And the parties have been unable to present the Court with a pre-enforcement Excessive Fines case. There may be a scenario where a pre-enforcement evaluation is appropriate and necessary, for example when the fine is mandatory and in a fixed amount. But when the fines are discretionary and depend on specific factual circumstances, the Court is left to evaluate the constitutionality of the Statute on hypotheticals alone.

Finally, a fine is only excessive if it is "grossly disproportional" to the prohibited conduct. *Qwest Corp.*, 427 F.3d at 1069. But fines imposed under § 181.723 are subject to § 14.045, which requires the agency imposing the fine to evaluate the specific factual circumstances surrounding the violation. In essence, § 14.045 requires the fine imposed to be directly proportional to the conduct.

Because Plaintiffs have not shown that the Excessive Fines Clause applies here, that a pre-enforcement challenge would be appropriate, or that the fines imposed would be "grossly disproportional," they have not shown a likelihood of success on Count II.

**C. Preemption**

Count III alleges that the Statute is preempted by the National Labor Relations Act ("NLRA") under *Garmon* and *Machinist* preemption.

**i. *Garmon* Preemption**

*Garmon* preemption would preempt state laws that conflict and those that "arguably conflict" with the NLRA. *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244 (1959); *see also Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 776 (2023) ("States cannot regulate conduct that the NLRA protects, prohibits, or arguably protects or prohibits." (internal quotation marks omitted)).

Plaintiffs suggest that because in certain circumstances involving collective bargaining, the NLRA requires an employer to furnish lists of employees to the National Labor Relations Board or unions, the Statute's reporting requirements attempt to regulate conduct that is already regulated by the NLRA. But the Court fails to see how the

fact that the NLRA imposes reporting requirements on employers with respect to collective bargaining has any bearing on the classification of construction workers as independent contractors, much less preempts or arguably preempts the Statute's reporting requirement. Accordingly, Plaintiffs have not shown a likelihood of success under *Garmon* preemption.

### ii. *Machinist* Preemption

*Machinist* preemption preempts state laws that regulate areas that Congress intended to leave open to the "free play of economic forces." *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wis. Emp. Rels. Comm'n*, 427 U.S. 132, 140 (1976).

Plaintiffs allege that because the NLRA excluded independent contractors from the collective bargaining requirements, Congress intended to leave regulation of independent contractors to economic forces. Plaintiffs seem to suggest that the fourteen-part classification test will subject independent contractors to collective bargaining agreements at random times which would impact the collective bargaining space that Congress intended to leave to market forces. But the classification of independent contractors was never left to market forces. Instead, the NLRA, in excluding independent contractors, also established a method for classifying them. 29 U.S.C. § 152(3) (defining "employee"); *FedEx Home Delivery v. N.L.R.B*, 563 F.3d 492, 495–98 (D.C. Cir. 2009). Because Congress did not leave the classification of independent contractors to market

forces, Plaintiffs have failed to demonstrate a likelihood of success under *Machinist* preemption.

In sum, Plaintiffs have failed to show a likelihood of success on Count III.

### D.     Procedural Due Process

Count IV alleges that the Statute violates procedural due process because it deprives the Members of protected interests in avoiding imprisonment, in avoiding adverse state action, and in property (money) without due process. Count IV amounts to nothing more than conclusory allegations.

Even assuming that the Statute deprives the Members of a liberty interest or property interest, Plaintiffs have provided no evidence that the Statute does so without adequate process. Before any deprivation of liberty interests, the Members would be afforded standard criminal due process rights. And prior to being deprived of property under the Statute, the Members may appeal through the administrative process. Plaintiffs have not presented a likelihood of success on their procedural due process claims relating to liberty and property interests.

Plaintiffs also argue that because the Statute was passed as part of an omnibus bill, the Statute violates the Members' right to have state statutes passed under the single subject requirement of the Minnesota Constitution. Minn. Const., art. IV, sec. 17. Plaintiffs argue that the Members have a protected interest in state statutes being passed in accordance with the state constitution. But even if true, the Court fails to see how that

translates into a federal procedural due process claim, so Plaintiffs have not shown a likelihood of success on this basis either.

### III.     IRREPARABLE HARM

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Phyllis Schlafly Revocable Tr. v. Cori*, 924 F.3d 1004, 1009 (8th Cir. 2019) (quoting *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009)).  The movant must demonstrate that irreparable harm is "*likely* in the absence of an injunction," not merely possible.  *Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*, 115 F.4th 889, 893 (8th Cir. 2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

The only harm Plaintiffs allege is economic harm: that the Statute forces the Members to either treat everyone as an employee and pay the associated costs, or else risk being subject to fines.  Plaintiffs further argue that because the Statute imposes such a binary choice, the Members' ongoing livelihood is in jeopardy.  But economic harm alone is rarely sufficient to constitute irreparable harm.  *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986); *see also Ryko Mfg. Co. v. Eden Servs.*, 759 F.2d 671, 673 (8th Cir. 1985) (finding economic harm sufficient when the existence of the business is threatened).

The Statute does not mandate the closure of any of the Members' businesses, and Plaintiffs have presented no evidence that it actually will.  Plaintiffs complain about the potential enormous fines while ignoring the fact that DLI has discretion over whether to

impose fines at all and in what amount. Plaintiffs have failed to show that the Members face irreparable harm.

## IV.     BALANCE OF HARMS/PUBLIC INTEREST

The remaining *Dataphase* factors—balance of harms and the public interest—merge when the government opposes injunctive relief. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Plaintiffs allege that the violation of the Members' constitutional rights is a harm outweighed by any harm to the State. But the Members are unlikely to suffer irreparable harm under the Statute and the State has a strong interest in enforcing the Statute. The Legislature likely was concerned that construction workers have long been misclassified as independent contractors instead of employees. An injunction here would perpetuate those inequities.[2] The balance of harms and public interest weigh against enjoining enforcement of the Statute.

## CONCLUSION

Plaintiffs seek an injunction preventing the enforcement of Minnesota Statutes § 181.723 because they allege the Statute is unconstitutionally vague, in violation of the Excessive Fines Clause, preempted by the NLRA, and in violation of procedural due process. But Plaintiffs have failed to show a likelihood of success on any of their claims. They have also failed to show that the Members will suffer irreparable harm because the

---

[2] The harm is amplified if, as Plaintiffs suggest, an injunction would enjoin enforcement of the amended fourteen-part test, while the former nine-part test would expire on March 1, 2025, effectively leaving no classification test in place.

only harms alleged are economic. Furthermore, the balance of harms and public interest weigh against enjoining enforcement of the Statute. Because all the *Dataphase* factors weigh in favor of the State, Plaintiffs' Motion for a TRO and a Preliminary Injunction will be denied.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for a Temporary Restraining Order and a Preliminary Injunction [Docket No. 8] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 5, 2025
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge